STATE EX REL. MITCHELL IRRIGATION DISTRICT v. PARSHALL, STATE ENGINEER, ET AL., CONSTITUTING THE STATE BOARD OF CONTROL.

(No. 739.)

WATER AND WATER RIGHTS—ADJUDICATION OF PRIORITIES—BOARD OF CONTROL—JURISDICTION—MANDAMUS.

1. Upon an application to adjudicate a water right, in a proceeding under the statute for the adjudication of priorities, it is the duty of the State Board of Control in the first instance to determine under the law whether the applicant has a water right, and the board's finding on that question may be made the basis of an appeal to the proper district court.

2. In adjudicating priorities of right to the use of water the refusal of the Board of Control to take any action upon the proof of one claiming an appropriation is equivalent to a denial of the right of such party to appeal to the courts under the provision of the Constitution that the decisions of the Board of Control shall be subject to review by the courts of the state, for, where the board declines to decide or act, there is nothing to appeal from.

3. In an adjudication under the statute of the priorities of right to the use of water from an interstate stream, where proof

of appropriation has been filed for the irrigation of lands
in the adjoining State through the diversion of water from
the stream in this State, the Board of Control has juris-
diction, and it is its duty to act upon such proof and deter-
mine whether under the law the applicant has a water
right, and the board may be required to act in the matter
by mandamus.

[Decided May 15, 1914].                    (140 Pac. 830).

ORIGINAL proceeding in mandamus.

The petition was filed in the name of the State of Wyo-
ming, on the relation of The Mitchell Irrigation District, a
corporation, against A. J. Parshall, State Engineer; Frank
S. Knittle, Superintendent of Water Division No. One; C.
W. Stroud, Superintendent of Water Division No. Two;
G. Ralph Hoover, Superintendent of Water Division No.
Three, and C. E. Howell, Superintendent of Water Divis-
ion No. Four, constituting the Board of Control, praying
for a writ of mandamus requiring said Board to pass upon
the relator's proof and determine its priority to the use of
waters of the North Platte River for irrigation purposes.
An alternative writ was issued, and the cause was heard
upon demurrer to the petition and alternative writ.

*Clark & Clark,* for relator.

The Board of Control is the only tribunal having juris-
diction to consider relator's rights, for the reason that the
relator appeared in the proceeding before the board in the
North Platte River Adjudication, which vested the board
with exclusive jurisdiction to determine the rights of rela-
tor, even though the jurisdiction of the board and the courts
may in the first instance have been concurrent. This con-
tention is, however, broader than necessary in the case at
bar, for the question is whether the board has jurisdiction
either exclusive or concurrent over the subject matter. A
preliminary question presents itself, viz: the jurisdiction of
the Wyoming courts, in the absence of any statutory pro-
ceeding, to entertain a suit to quiet title to a water right
where the diversion is in this State and the use is in another

State.  The only reason which can be suggested for denying such jurisdiction is that a water right for irrigation purposes is an appurtenance to land, and that the irrigated land in this case being outside the jurisdiction of a court in this State, it could not quiet title to a mere appurtenance to such land.  But that objection is based entirely upon definition. It may be conceded that a water right for irrigation is appurtenant to the land irrigated, for certain purposes. (Frank v. Hicks, 4 Wyo. 502).  It is also conceded that a court has no jurisdiction to quiet title to land lying without the State, and, ordinarily, there would be no jurisdiction to quiet title to an appurtenance to such land—not, however, because it is an appurtenance, but because it is ordinarily situated without the State.  But should the appurtenance lie in one State and the land in another, the rule aforesaid as to jurisdiction can no longer apply, for the court of the first State then has physical control over the appurtenance, and having such control may effectively enforce a decree quieting title thereof.  This is illustrated with respect to the canal here in question by the refusal of the court in Nebraska to adjudicate its right because of lack of jurisdiction.  (Enterprise Irr. Dist. v. Tri-State Land Co., 138 N. W. 171).  The precise question whether a court has jurisdiction to quiet title to an appurtenance in one State to land in another State does not seem to have been determined. But in no case where the western courts have considered the character of a suit to quiet title to water rights in connection with the question of jurisdiction is there any dicta denying the proposition that the court of the State wherein the appurtenance is situated has jurisdiction.  (Taylor v. Hulett, 15 Ida. 265, 97 Pac. 37;  Conant v. Irr. Co., 23 Utah, 627, 66 Pac. 188;  Rickey Land & Cattle Co. v. Miller & Lux, 152 Fed. 11;  Willey v. Decker, 11 Wyo. 496).  A suit or proceeding to adjudicate water rights is not considered by the courts as an action to quiet title to the land irrigated, but similar merely to such an action because the water right is appurtenant to the land and therefore real property.  There is a distinction without a difference be-

tween a decree granting a party a certain appropriation and enjoining another party from interfering with it, and one declaring the party to be entitled to the right and quieting his title thereto as against the other party; in either case the effect of the decree is to bar the one party from questioning the validity of the other's right. (Rickey L. & C. Co. v. Miller & Lux, *supra*). Assuming upon the authority of the cases cited that, in the absence of a statutory proceeding, the Wyoming courts would have jurisdiction to quiet title to the appropriation of the relator, does the Board of Control have jurisdiction under the statute? The statutory proceeding before the board differs from a suit to quiet title in several important particulars. (See Farm Inv. Co. v. Carpenter, 9 Wyo. 110). Our irrigation code is based upon the fundamental principle of State control; and the object and purpose of the statutory proceeding is to furnish the requisite data to the water officials whereby they may effectively perform the duties of supervising and distributing the public waters to individual appropriators in accordance with their respective rights. The effect of the adjudication in determining the different rights as between the respective appropriators is merely incidental. Has the board jurisdiction to consider and adjudicate a claim of appropriation under a ditch diverting water in Wyoming for use in Nebraska? The statute contains nothing restricting the jurisdiction of the board, but the provisions are general and all-inclusive. The board's jurisdiction is expressly extended to all claims to the use of the public waters in Wyoming, irrespective of the time the right was acquired, the character of use, or the place of use. If the board has no jurisdiction upon the facts in this case, therefore, it must be for the reason that the relator's appropriation presents a peculiar feature which would make a determination by the board so abortive or improper as to compel a declaration that it was not intended by the Legislature to extend the board's jurisdiction to such an appropriation as that of the relator. But we believe such a situation is not presented by the facts. The purpose of the statutory proceeding being

to render it possible for an effective supervision and distribution of the public waters by administrative officers, it is just as important that such officers have authority over diversion by interstate ditches as over a diversion by a ditch located entirely within the State. There are diversions in Wyoming below the relator's canal, which also irrigate land in Nebraska, and it will be necessary for a regulation of its headgates by the Water Commissioner, which regulation cannot occur until the water right has been adjudicated. (Ryan v. Tutty, 13 Wyo. 122; Hamp v. State, 19 Wyo. 377). If the board has no jurisdiction to adjudicate the rights under ditches of this class, we will have the unsatisfactory situation of a decree covering all the diversions from the North Platte River in this State excepting two; and the water officials would be authorized to regulate the flow of water into every ditch excepting those two, the regulation of which, because of their size, would be more important to the other appropriators from the river than the regulation of any other ditch. Thus we contend that the Legislature has complete control over the diversions of the two ditches referred to. (Bean v. Morris, 221 U. S. 485). Having power over the diversion of water by an interstate ditch, and the exercise of that power being of the utmost importance if State control is to be effective, and the statutory adjudication of water rights being intended for the benefit of State control, it must be assumed that the Legislature intended to include interstate ditches within the jurisdiction of the board. The reasoning in the Colorado case of Lamson v. Vailes, 27 Colo. 201, relied upon by the defendant, we believe unsatisfactory and illogical. The fact of diversion is the salient feature of an appropriation of water with respect to the question of jurisdiction. (Turley v. Furman, 114 Pac. 279). It will hardly be contended that the State does not have as complete control through its police power over a diversion of its waters by an interstate ditch as by a diversion by any other ditch. Jurisdiction is necessary over all diversions included within the right to make an appropriation of water for beneficial use.

(See Stockman v. Leddy, 129 Pac. 220). The relator having invoked the jurisdiction of the board by filing its proof of appropriation, it has the right to insist upon a determination of the matter by the board.

D. A. Preston, Attorney General, for defendants.

The State Board of Control is a creature of statute and its duties are specifically set forth therein. Water may only be appropriated for beneficial use. The board having the right of general supervision, it follows that the use of water must be under its control. Otherwise it would be impossible for an enforcement of the laws regulating the appropriation, supervision and diversion of the public waters. It is made the duty of the board not only to fix the amount and manner of the diversion of the water, but to regulate its use. How can the board regulate the use of water beyond the boundaries of the State? Even after adjudication the water must be used in accordance with the rules of the Board of Control. (Claypool v. O'Neil, (Ore.) 133 Pac. 349). If the duties of the board ended with the diversion of the water, the relator might be in a position to maintain mandamus. But the greater part of the function of the board is the regulation of the use of the water. It cannot enforce its rules and decrees in Nebraska, and is therefore not in a position to adjudicate the water right of this relator, which relates to the irrigation of land in the State of Nebraska. Should the adjudication be attempted, the board would be in the position of having granted the right with conditions attached, which conditions it could not enforce, and this would not be affected by the control of the point of diversion. It is settled in this State that a water right for irrigation is appurtenant to the land. (Frank v. Hicks, 4 Wyo. 502). The courts of the State wherein irrigated lands are situated have jurisdiction of the use and priorities of the waters. (Taylor v. Hulett, 97 Pac. 37). It was not intended that the board should adjudicate a water right beyond the limits of the State, nor could the Legislature authorize such an adjudication. (Lamson v. Vailes, (Colo.) 61

Pac. 231). To adjudicate is to hear and determine a matter according to law. (U. S. v. Irwin, 127 U. S. 181; 11 Cyc. 677, 683). If a court or board cannot decide or settle all questions arising in the case or proceeding it cannot take jurisdiction. (11 Cyc. 677; Bullock v. Bullock, 52 N. J. Eq. 561). The only relief from the findings and decisions of the Board of Control is an appeal to the District Court. (Comp. Stat. 1910, Sec. 779). An order or adjudication that will be ineffectual when issued should not be made. A suit or proceeding relating to water attached to land must be brought in the jurisdiction where the land is situated. (Taylor v. Hulett, *supra;* Fritts v. Camp, (Cal.) 29 Pac. 867). The statutory proceeding for adjudicating water rights has no application to cases of diversion within the State for the irrigation of lands outside the State. (Lamson v. Vailes, *supra;* Conant v. Deep Cr. Co., 66 Pac. 188; Willey v. Decker, 11 Wyo. 497).

SCOTT, CHIEF JUSTICE.

The relator filed its petition in this court praying the issuance of a writ of mandamus directed to and requiring the Board of Control to pass upon its proofs and fixing its priority to the use of waters of the North Platte River for irrigation purposes. An alternative writ was issued, to which petition and writ the defendants filed their demurrer alleging as grounds thereof that neither the petition nor writ state facts sufficient to constitute a cause of action in favor of the plaintiff or to warrant the relief prayed. The demurrer was argued and submitted and is now before the court for its decision. In considering the question the facts alleged in the petition must be taken and deemed to be true and are as follows:

"Comes now the Mitchell Irrigation District, a corporation, the above named relator, and respectfully shows unto the court:

"1. That on June 20th, 1890, the Mitchell Irrigation and Canal Company, a corporation, commenced the surveys for a line of ditch which it proposed to construct from a point

on the south bank of the North Platte River in Section 10, Township 23 North, Range 60 West, in the County of Laramie, Territory of Wyoming, in an easterly course, crossing the boundary line between the Territory of Wyoming and the State of Nebraska at a point about 400 feet distant from the headgate of said ditch and running a distance of many miles into the State of Nebraska.

"2.   That on June 20th, 1890, the said Mitchell Irrigation and Canal Company caused a notice, signed by its president, to be posted upon a board at the proposed point of diversion of said ditch, said notice being that the said Mitchell Irrigation and Canal Company claimed an appropriation from the North Platte River through said ditch to the extent of 224 cubic feet per second, and setting forth the size of said ditch.

"3.   That on June 25th, 1890, the said Mitchell Irrigation and Canal Company caused a copy of said notice, verified by the affidavit of its president, to be filed in the office of the County Clerk and Ex-officio Register of Deeds of the County of Laramie, Territory of Wyoming, and on the same day caused to be filed in said office a statement of claim for said ditch, verified by its president, in which statement was set forth the name of the stream, the name of the ditch, the names and postoffice address of the owners, the location of the headgate, the dimensions of the ditch, its capacity, the date of commencement of work and of the actual appropriation of the water therethrough, and the number of acres of land lying thereunder and to be irrigated therefrom.

"3.   That the said surveys were completed with diligence and on August 18th, 1890, the actual work of excavation of said ditch was commenced and continued without intermission until July 18th, 1891, when said ditch was completed and water was carried therethrough and applied to the irrigation of the lands lying thereunder; that several thousand acres of land lying under said ditch were reduced to cultivation in 1891 and the area of such land was increased yearly thereafter until the year 1898 when approximately 13,500

acres were under cultivation from said ditch, all of said lands being situate within the State of Nebraska, and said ditch irrigating no lands within the State of Wyoming.

"4. That on March 27th, 1906, by an order duly entered, the Board of Control of the State of Wyoming directed that a general adjudication of all rights of appropriation from the North Platte River be had and that the Superintendent of Water Division No. One, in which said stream lay, should give proper notices and take all proofs of appropriation; that on May 9, 1906, the Superintendent of Water Division No. One forwarded by registered mail to all appropriators from the North Platte River, including the Mitchell Irrigation and Canal Company, a notice setting forth the date when the State Engineer would begin the examination of the stream and ditches diverting water therefrom, the date when the said Superintendent would begin the taking of testimony, and the date when the said taking of testimony would close; that prior to May 15, 1906, the said Superintendent caused to be published in two issues of a newspaper published in each County through which said North Platte River runs a notice that the measurement of ditches would commence June 15, 1906, that the Superintendent would commence to take proofs of appropriation on June 23, 1906, and travel up the river taking such proofs until September 20, 1906, on which day proofs would be closed, and that proofs would be open to inspection at certain designated places on September 25, September 27, September 29, October 4 and October 8, 1906.

"5. That at the time and place so designated for the commencement of the taking of said proofs of appropriation, the officers of the relator, the relator having theretofore acquired all of the right and title of said Mitchell Irrigation and Canal Company in and to said ditch and the water appropriation therefor, appeared before the said Superintendent and filed with said Superintendent a proof of appropriation on behalf of relator, certified by the affidavit of a director of relator, claiming a right to the use of the waters of said North Platte River, with a priority dating

from June 20th, 1890, through said ditch, therein designated the Mitchell Canal, for the irrigation of certain lands within the State of Nebraska and lying under said ditch.

"6. That on November 1, 1907, the said Superintendent caused to be published in the *Guernsey Gazette,* a newspaper of general circulation in said Laramie County and published at Guernsey in said County, a notice that certain persons, including this relator, had filed proofs of appropriation from the North Platte River which would be opened to inspection on November 8, 1907, that contests must be filed within fifteen days thereafter, and that if no contests should be filed the said proofs of appropriation would be submitted to the Board of Control with the recommendation that final certificates be issued thereon.

"7. That no contest was filed against the said proof of appropriation of this relator.

"8. That on April 18, 1912, the Superintendent of Water Division No. One transmitted the said proof of appropriation of this relator to the Board of Control for its action and that the said Board of Control refused to consider said proof and on the 4th day of December, 1912, entered the following order with respect thereto:

"In Re Petition of the Mitchell Canal Company for Adjudication of Their Right to the Use of Water from North Platte River in the State of Nebraska, in Water Division No. One.

ORDER.

"This matter coming on for hearing before the Board of Control on the 20th day of November, 1912, upon the report of Frank S. Knittle, Superintendent of Water Division Number One, transmitting to the board the proof of appropriation of the Mitchell Irrigation District, and it appearing that the Mitchell Canal, the canal covered by said proof, diverts water in Wyoming for the irrigation of lands in the State of Nebraska and that no lands are irrigated therefrom in the State of Wyoming, and the Attorney General having advised the board that the Board of Control is with-

out jurisdiction to enter any decree respecting said canal, It is Hereby Ordered that the Board of Control take no action upon said proof."

"9.   That relator has no remedy in the premises at law.

"10:   That this action is instituted in this court in the first instance for the following reasons: This matter having been referred by the Board of Control to the Attorney General for an opinion as to the jurisdiction of the Board of Control to adjudicate a right of the character here claimed, where a ditch diverts water in Wyoming for the irrigation of lands in another State, and the Attorney General being doubtful as to the existence of such jurisdiction he so advised the board in order that the question of jurisdiction might be judicially ascertained, if possible, before the board should take any action; the board now has or soon will have before it several more proofs involving the same question and is desirous of having a judicial determination, by the highest court of the State, as to whether it has jurisdiction to determine the validity of such appropriations; in the case of the proof of appropriation of the relator, neither any other appropriator nor the Board of Control dispute or contest any of the facts upon which an appropriation is claimed and the only questions involved are those of law—1st, what tribunal has jurisdiction to adjudicate the right of relator, and 2nd, as a matter of law, is such an appropriation valid?   The first question must be settled before the second can be considered and as a determination of the first question will affect the rights of no person or corporation but will merely establish the matter of practice it is necessary that such a determination be had as soon as possible and that it be final.

"Wherefore, relator respectfully prays that a writ issue requiring and directing the defendants, as the Board of Control, to proceed with the determination of the right of relator to an appropriation from the North Platte River through the Mitchell Canal, as claimed in its said proof of appropriation."

The only question which this court need here consider is whether the Board of Control has jurisdiction to consider the question of relator's priority, if any, upon the facts pleaded, for in our view whether any other tribunal could adjust relator's claim to a water right is not germane here, and as to the further interrogatory as to whether his appropriation is valid as propounded in the second question, it is one which is to be primarily determined by the Board of Control if such board be clothed with the power so to do. Sections 1, 2 and 3 of Article VIII of the Constitution of this State are as follows:

"Section 1.    The water of all natural streams, springs, lakes or other collections of still water, within the boundaries of the State, are hereby declared to be the property of the State."

"Sec. 2.    There shall be constituted a Board of Control, to be composed of the State Engineer and Superintendents of the Water Divisions; which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the State and of their appropriation, distribution and diversion, and of the various officers connected therewith. Its decisions to be subject to review by the courts of the state.

"Sec. 3.    Priority of appropriation for beneficial uses shall give the better. right.    No appropriation shall be denied except when such denial is demanded by the public interests."

It will be observed that the powers conferred upon the board remain dormant until the manner of their execution is prescribed by law.    In considering such powers and the exercise thereof the provision of the Constitution and the lawful regulations enacted in pursuance of such provision must be considered together.    Such construction is not, however, required in this proceeding.    Upon an application to adjudicate a water right it is the duty of the board in the first instance to determine under the law whether the applicant has a water right and the board's finding on that question may properly be made the basis

of an appeal to the district court of the county wherein the water of the state is appropriated. Here there is nothing to appeal from and that is the complaint of the company. Such company may or may not on its proofs and showing or on the facts alleged be entitled to the claimed water right. To determine that question an application as it appears from the allegation of the petition has been properly made and presented to the board; and we think the board has jurisdiction to determine the fact whether or not upon the evidence so produced a water right recognized or allowed by our laws has been shown. To refuse to act in such a case is equivalent to a denial of the right of appeal to the courts of the state as provided by the Constitution in order that the questions involved may take the usual course at the instance of the party aggrieved. We are of the opinion that the board has power to act under the provisions of the Constitution and within the statutory regulations with reference to adjudications of water rights. This court in this proceeding can go no further than to determine whether the board shall act at all, and is not concerned as to what conclusion the board may reach. It follows that the board has jurisdiction to and should act upon the proofs. Whether a right for the use shown by the proofs was or could have been lawfully acquired is not now before the court. This is conceded by counsel. The demurrer to the petition and writ is overruled.

POTTER, J., and BEARD, J., concur.